# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALBERT LEROY GRAHAM, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:11-cv-00035** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on January 31, 2007, alleging that he had been disabled since October 1, 2006, due to neck injury, back pain, anxiety, depression, and joint pain.  Docket No. 12, Attachment ("TR"), TR 70-71, 111-15, 116-18.  Plaintiff's applications were denied both initially (TR 47, 48, 66-71) and upon reconsideration (TR 49, 50, 73-75, 76-78).  Plaintiff subsequently requested (TR 79) and received (TR 85-107) a hearing.  Plaintiff's video hearing was conducted on June 25, 2009, by Administrative Law Judge ("ALJ") Jack B. Williams.  TR 12-46.  Plaintiff and vocational expert ("VE"), Jo Ann Bullard, appeared and testified.  *Id.*

On August 5, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 51-63.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: degenerative disc disease, status post multiple surgeries, depression, and substance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to stand

and/or walk for two to four hours in an eight hour workday and sit for six to eight hours in an eight hour workday.  The claimant needs a sit/stand option every thirty minutes.  The claimant needs to avoid frequent bending, stooping, crawling, and climbing, and other activities that would be reasonably expected to aggravate his low back problem.  The claimant can relate adequately with others.  The claimant can perform simple, unskilled, and semi-skilled tasks but could not perform complex or skilled tasks.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born July 10, 1962 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged onset date. (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 56-63.

On August 18, 2009, Plaintiff timely filed a request for review of the hearing decision.

TR 10-11.  On February 25, 2011, the Appeals Council issued a letter declining to review the

case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) rejecting the opinion of Plaintiff's treating physician, Dr. Richard Berkman; (2) failing to set forth good cause for his rejection of Plaintiff's treating psychologists' reports; and (3) evaluating Plaintiff's subjective complaints. Docket No. 17. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to the Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ erred in rejecting the opinion of his treating physician, Dr. Richard Berkman, who described limitations that would not allow Plaintiff to perform even sedentary work. Docket No. 17. Plaintiff further argues that Dr. Berkman's opinion should have been given controlling weight because he has treated Plaintiff "over a number of years and there are objective findings to support his opinion." *Id.*

Defendant responds that the ALJ properly considered Dr. Berkman's opinion. Docket No. 20. Defendant argues that Dr. Berkman's statements regarding Plaintiff's functional limitations do not constitute an assessment of residual functional capacity. In fact, Dr. Berkman explicitly declined to give an opinion on Plaintiff's residual functional capacity because he had not done a proper course of physical therapy, which he opined would have improved Plaintiff's condition. *Id.* Additionally, Defendant notes that, under the Regulations, an opinion that a claimant cannot work is entitled to no deference because it addresses an issue that is reserved to the Commissioner. *Id., citing* 20 C.F.R. §§ 404.1527(e), 416.927(e). Defendant further argues that, the ALJ properly accorded Dr. Berkman's opinion little weight because it was inconsistent

with the objective medical evidence of record. *Id.*

Plaintiff, in his Reply, reiterates his contention that the ALJ should have accepted Dr. Berkman's opinion because it was based on objective evidence, and rendered after more than two years of treating Plaintiff. Docket No. 21.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) Specialization.  We generally give more weight to the
> opinion of a specialist about medical issues related to his or her area
> of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of

Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, Dr. Berkman treated Plaintiff for several years, a fact that would justify

the ALJ's according greater weight to Dr. Berkman's opinion than to other opinions, as long as

that opinion was consistent with, and supported by, the evidence of record.  As will be discussed

in greater detail below, however, the ALJ declined to accord Dr. Berkman's opinion great

weight.

Discussing Dr. Berkman's treatment of Plaintiff, the ALJ stated:

> The claimant sought treatment with Richard A. Berkman, MD, a
> neurosurgeon, for his back impairment.  After the claimant's
> second surgery in 2000, Dr. Berkman released the claimant to light
> duty work with no lifting over thirty pounds.  These restrictions
> were put in place for only six months and it was found that the
> claimant could lift up to fifty pounds after that time.  The claimant
> did not see Dr. Berkman again for back pain until September 2007.
> The claimant underwent additional surgery on September 18, 2008
> due to a recurrent disc rupture at L5-S1 on the left.

TR 60 (internal citations omitted).

The ALJ also considered Dr. Berkman's report that Plaintiff continued to experience back pain even after the surgery in 2008. *Id.* The ALJ noted that Dr. Berkman performed multiple diagnostic tests in an attempt to treat this alleged pain, but that the tests all failed to establish that Plaintiff's nerve was damaged. *Id.* Specifically, the ALJ stated:

> After the surgery, the claimant continued to complain of some radicular symptoms. A CT scan however showed no problems. On January 23, 2009, Dr. Berkman reviewed the objective data with the claimant. An EMG was normal and showed that the nerve was not damaged. A myelogram and post myelogram CT showed a small crack adjacent to the entry point of the pedicle screw on the left at S1. However, on the axial views, it was no where near the nerve root and was tiny. Dr. Berkman noted that there was only some scar tissue around the S1 nerve root. The claimant reported feeling a little better.

*Id.* (internal citations omitted).

Plaintiff returned to Dr. Berkman on May 29, 2009, and continued to complain of pack pain. TR 417. During this visit, Dr. Berkman stated that Plaintiff's back pain "really precludes him from any sort of work." *Id.* Dr. Berkman also noted that Plaintiff "cannot sit for very long, cannot stand for very long." *Id.* Plaintiff argues that these observations amount to an opinion describing limitations that "would not allow [Plaintiff] to perform substantial gainful activity, even at the sedentary level." Docket No. 17.

The ALJ properly considered these observations. TR 60. As the ALJ stated:

> The claimant returned to see Dr. Berkman on May 29, 2009, and reported that his left leg pain had subsided. Dr. Berkman noted however that the claimant had not rehabbed his back very well and was continuing to have pain, which precluded him from any type of work. He noted that he could not sit for very long or stand for very long.

*Id.* (internal citations omitted).

After considering the evidence of record, the ALJ ultimately rejected Dr. Berkman's statement that Plaintiff was unable to work due to back pain. *Id.* The ALJ noted that Dr. Berkman's observations were not made as part of a residual functional capacity assessment (*id.*), and, in fact, Dr. Berkman was explicit that he was not assessing Plaintiff's residual functional capacity (TR 417). As Dr. Berkman explained, "it is a little bit premature to determine [Plaintiff's] impairment rating because he has not done a proper trial of physical therapy, which probably would improve his condition." TR 417. Dr. Berkman planned a functional capacity evaluation after Plaintiff completed the recommended three weeks of physical therapy, which would have allowed Dr. Berkman to "get an idea of where [Plaintiff] would be as far as impairment rating etc. and as far as long-term restriction." *Id.* The ALJ properly considered that Dr. Berkman was not providing Plaintiff a residual functional capacity assessment, and also considered that Dr. Berkman's observations about Plaintiff's limitations were contradicted by the diagnostic evidence referred to above. TR 60. Addressing these two concerns, the ALJ specifically stated that:

> [Dr. Berkman] felt that it was premature to determine his impairment rating because he had not done a proper trial of physical therapy which would probably improve his condition. He recommended a three week trial of physical therapy followed by a functional capacity examination. It was also recommended that the claimant return to see him after the physical therapy and imaging of the claimant's back would be reviewed at that time. He felt that he could not determine the claimant's restrictions until this was done. On examination, the claimant had decreased sensation in the S1 dermatome and was missing his ankle reflux [*sic*] on the left. Dr. Berkman stated this was consistent with an S1 radiculopathy, certainly resolved, but with some residual nerve deficit. I have considered Dr. Berkman's findings as he was the claimant's treating physician for his back impairment. I give little weight however to his opinion that the claimant was unable to

work due to pain as it is not consistent with the objective medical
evidence. It is noted that he declined to give an opinion on the
claimant's functional capacity.

*Id.*

Moreover, to the extent that Dr. Berkman suggested that Plaintiff could not work, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988)

As has been noted, the ALJ found that Dr. Berkman's observation that Plaintiff could not work due to pain was contradicted by the failure of Dr. Berkman's own diagnostic tests to establish damage to Plaintiff's nerve. The ALJ also found that Dr. Berkman explicitly stated that his observations were not a functional capacity assessment. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.,* 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Berkman's descriptions controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Weight Accorded to the Opinions of Plaintiff's Treating Psychologists

Plaintiff maintains that the ALJ violated 20 C.F.R. § 404.1527 by failing to set forth good

cause for rejecting Plaintiff's treating psychologists' reports, and particularly, his assigned GAF score of 49. Docket No. 17. Plaintiff argues that the ALJ lacked substantial evidence to find that Plaintiff's GAF score of 49 from Plateau Mental Health Center was inconsistent with the objective medical evidence and with Plaintiff's wide range of activities. *Id.* Plaintiff contends that, "there is ample support for the GAF score [of] 49 in [Plaintiff's] progress notes of record as well as the notes and evaluations performed at Plateau Mental Health Center." *Id.* Plaintiff further contends that the GAF score of 49 is also supported by his hospitalization at Moccasin Bend Mental Health Institute from December 24-27, 2006; and by the evaluations of Drs. Edwards and Regan, who "found significant restrictions in [Plaintiff's] behavior." *Id.*

Defendant argues that the ALJ properly declined to accord weight to the GAF score of 49 because the ALJ found that it was inconsistent with the objective medical records and with Plaintiff's activities. Docket No. 20. Defendant further argues that, for disability determination purposes, GAF scores do not directly correlate to the severity requirements in the mental disorder listings. *Id.*

Plaintiff does not address this statement of error in his Reply.

As noted above, if the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). As is also explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell*, 105 F.3d at 245 (*citing Consolidated*

*Edison Co.,* 305 U.S. at 229).

The record reflects that Plaintiff was treated at Plateau Mental Health Center for an extensive period of time. TR 291-333, 386-416. The record also reflects that, while at Plateau Mental Health Center, Plaintiff was assessed with a GAF score of 49. *Id.* A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functions. GAF scores, however, are not determinative of disability for Social Security purposes. In fact, the Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings." *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed.Reg. § 50746–01 (Aug. 21, 2000). Nevertheless, the ALJ in the case at bar considered the GAF score of 49, along with the notes and evaluations from Plateau Mental Health Center, and found that they were inconsistent with the objective medical evidence and with Plaintiff's wide range of activities. TR 61. With regard to Plaintiff's daily activities, the ALJ found that Plaintiff:

> reported that he spent most of his day watching television and spending time with his girlfriend. He also reported that he prepared meals, performed household chores, shopped in stores, and engaged in social activities. As discussed above, it also appears that the claimant engaged in some work activity during 2007.

TR 59-60 (internal citations omitted). Ultimately concluding that Plaintiff's ability to perform these activities was inconsistent with the restrictions delineated in a GAF score of 49, the ALJ also noted that Plaintiff could relate appropriately with others, and found that this was likewise inconsistent with the limitations inherent in a GAF score of 49. TR 61-62. The ALJ further stated that:

It is however noted that the claimant's social activities suggest that
he has only mild limitations in social functioning. The claimant
was also cooperative during this examination which does not
support significant limitations in this area.

TR 61 (internal citations omitted).

Additionally, the ALJ addressed Plaintiff's lack of compliance with his treatment

recommendations, and found this lack of compliance inconsistent with Plaintiff's alleged

mental limitations. TR 61. Specifically, the ALJ stated:

A provider at Plateau Mental Health Center noted on July 13, 2007
that he believed that with treatment adherence the claimant's
condition may improve enough to not need disability benefits. It
was noted that the claimant had not complied with his treatment
previously by not taking his medication as prescribed. The
claimant continued treatment at Plateau Mental Health Center but
continued to not consistently take his medication. It is noted that
the claimant's noncompliance with treatment recommendations
suggests that his symptoms are not as severe as he alleged.

TR 61 (internal citations omitted).

Plaintiff argues that his GAF score of 49 is also supported by his hospitalization at

Moccasin Bend Mental Health Institute. Docket No. 17. The ALJ properly considered this

hospitalization, stating:

He was psychiatrically hospitalized in December 2006 after he
attempted to hang himself while he was in jail. His Global
Assessment of Functioning (GAF) was rated as 25 but it was found
that he improved during his hospital course. The claimant sought
treatment at Plateau Mental Health Center in December 2006
where he was prescribed medication and met with a counselor. It is
noted that the claimant reported to a provider that he made a
suicide gesture while he was in jail in order to get out of jail.

TR 57 (internal citations omitted). The ALJ's articulated findings that Plaintiff's condition

improved after his stay at Moccasin Bend, and that Plaintiff's suicide attempt was made to get out of jail, constitute substantial evidence upon which the ALJ could rely as support for his decision.

Plaintiff additionally argues that Dr. Lawrence Edwards' finding that Plaintiff had "depressive symptoms" further supports his GAF score of 49. Docket No. 17. While Dr. Edwards did find that Plaintiff "present[ed] with symptomatology commensurate with a diagnosis of a major depressive disorder," and "Depressive symptoms observed of [Plaintiff] during this evaluation included tearfulness, dysphoric mood and irritability," Dr. Edwards also found that:

> No symptoms of anxiety or mania were observed of [Plaintiff] during this evaluation. Organicity was not suspected. Psychosis was not suggested. Evaluation of cognitive processes indicated that [Plaintiff's] attention and concentration skills were intact. He was fully oriented. Assessment of memory functions revealed no deficits in his immediate memory.

TR 229. Significantly, Dr. Edwards assigned Plaintiff a GAF score of 60 to 70. TR 230. The ALJ properly considered Dr. Edwards' report and noted that Dr. Edwards:

> found that the claimant had no limitations with understanding and memory. He also found that the claimant had no limitations with sustaining concentration and persistence. Additionally, it was found that he had no problems with adapting to changes and requirements. However, it was determined that he had moderate limitations with interacting with others. These findings are given significant weight as they are consistent with the objective medical evidence and the claimant's wide range of activities.

TR 61 (internal citations omitted).

As further support for his argument that his GAF score of 49 should have been accorded weight, Plaintiff contends that reviewing physician Dr. Regan found significant restrictions in

Plaintiff's behavior. Docket No. 17. The record, however, does not substantiate this claim. Dr. Regan found that Plaintiff was moderately limited in his abilities to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. TR 265-66. Notably, Dr. Regan did not find that Plaintiff was markedly limited in any category. Moreover, Dr. Regan found that Plaintiff could concentrate on and persist for simple and detailed tasks, with some difficulty; and that Plaintiff would have some, but not substantial, difficulty interacting with others. TR 267.

The ALJ considered Dr. Regan's findings, along with the findings of another state agency medical consultant, Dr. Fawz E. Schoup, whose findings agreed with Dr. Regan's. TR 61-62. With regard to the opinions of Drs. Regan and Schoup, the ALJ stated:

> A state agency medical consultant, Fawz E. Schoup, PhD, reviewed the claimant's records on May 9, 2007 to determine the claimant's mental residual functional capacity. It was found that the claimant could concentrate and persist for simple and detailed tasks, despite some difficulty. It was also determined that the claimant would have some, but not substantial, difficulty interacting with the public, co-workers, and supervisors. Another state agency medical consultant, William M. Regan, MD, reviewed the claimant's records on November 9, 2007 and affirmed these findings. These findings are given significant weight as they are consistent with the objective medical evidence and the claimant's wide range of activities. It is however noted that the claimant appears able to engage in social activities which indicates he can

relate appropriately with others.

*Id.* (internal citations omitted).

Significantly, neither Dr. Regan nor Dr. Schoup found Plaintiff to be significantly limited. As has been demonstrated, the ALJ properly considered the evidence of record, including Plaintiff's GAF score of 49 and all the evidence Plaintiff contends supports it's validity, and reached a reasoned decision. The ALJ appropriately articulated his rationale for accepting or rejecting the evidence; Plaintiff's argument on this point fails.

### 3.  The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ did not consider the record as a whole in concluding that Plaintiff's subjective complaints were not totally credible. Docket No. 17. Plaintiff maintains that 20 C.F.R. 404.1529 requires the ALJ to consider certain factors when evaluating credibility. *Id.* While Plaintiff does not explicitly state that the ALJ failed to consider any of these factors, Plaintiff argues that physical findings in the record support his allegations of pain; that third parties support Plaintiff's statements; and that Plaintiff's completed Function Report - Adult, dated February 13, 2007, as well as records from Plateau Mental Health Center, support Plaintiff's statements that he is not able to relate and maintain work. *Id.* Plaintiff notes that he had a good work record, when he was able to work. *Id.*

Defendant responds that "objective medical evidence and Plaintiff's activities do not support the full extent of plaintiff's allegations regarding his physical and mental condition." Docket No. 20. Defendant argues that Dr. Berkman's reports represent objective medical evidence that contradicts Plaintiff's alleged level of pain; that the ALJ properly discredited Plaintiff's statements because Plaintiff performed a wide range of activities that was

19

inconsistent with his alleged limitations; and that the third party function report completed by

Linda Collige was likely colored by the fact that the third party was Plaintiff's girlfriend. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's

allegations of disabling symptoms:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition and (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition or (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (emphasis added); see also 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled. . . ."); and *Moon v.

Sullivan,* 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations,

the ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain . . . do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also

consider the following factors and how they relate to the medical and other evidence in the

record: the claimant's daily activities; the location, duration, frequency and intensity of

claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of

medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

Plaintiff in the case at bar contends that the evidence of record supports his subjective complaints. Docket No. 17. Specifically, Plaintiff maintains that physical findings, a third party statement, the completed Function Report - Adult, and records from Plateau Mental Health Center all support his credibility. *Id.* With regard to his contention that "significant physical findings" support his allegations of pain, Plaintiff argues that Dr. Berkman's observations that Plaintiff "had continuing problems preventing him from any sort of work," and could not sit or stand "for very long," demonstrate that Plaintiff's subjective complaints are credible. *Id.* As has been discussed in the first statement of error, however, the ALJ properly considered Dr. Berkman's opinion, but ultimately discounted it because it was inconsistent with the failure of his own diagnostic tests to reveal any nerve damage and inconsistent with the evidence of record, and because Dr. Berkman felt that physical therapy likely would have improved Plaintiff's condition.

Plaintiff also argues that his subjective statements are supported by third parties; specifically by the Third Party Questionnaire completed by Linda Collige. Docket No. 17.

21

Arguing that Ms. Collige's Questionnaire lends credibility to his subjective complaints, Plaintiff notes that Ms. Collige reported that Plaintiff suffers numerous limitations due to depression and pain, and that she "must remind him to care for his personal needs by telling him he looks or smells bad." *Id.*

The ALJ properly considered Ms. Collige's opinion, noting:

> She stated that the claimant lived with her. She indicated that she had bipolar disorder and needed assistance from the claimant with some things. She however reported that the claimant experienced numerous limitations due to depression and pain.

TR 60. The ALJ ultimately accorded little weight to Ms. Collige's opinion because he believed it was influenced by her personal relationship with Plaintiff, and because it was internally inconsistent. *Id.* Specifically, the ALJ stated that:

> I have considered this reporting but note that it is likely colored by Ms. Collige's personal relationship with the claimant and her desire to assist him. It is also noted that the claimant is able to assist Ms. Collige with some activities.

*Id.* The ALJ properly considered and discounted Ms. Collige's opinion, and appropriately articulated his rationale for so doing.

Plaintiff additionally argues that his completed Function Report - Adult further bolsters his credibility with regard to his subjective complaints. Docket No. 17. Plaintiff argues that he does not feel like dressing himself, bathing, caring for his hair, or shaving, and that records from Plateau Mental Health Center substantiate that he does not feel like doing any of these activities. *Id.* Plaintiff further contends that his girlfriend has to force him out of the house to get his mind off his depression. *Id.* Plaintiff also states that the Function Report -

Adult indicates his physical limitations. *Id.*

The ALJ considered Plaintiff's Function Report - Adult, noting:

> The claimant alleged limitations due to back pain and
> psychological symptoms. He reported limitations with lifting,
> squatting, bending, standing, reaching, walking, sitting, kneeling,
> hearing, stair climbing, seeing, and concentration.

TR 59 (internal citations omitted). The ALJ ultimately chose not to credit these allegations

because they were inconsistent with Plaintiff's reported daily activities. *Id.* Specifically, the

ALJ found that:

> The claimant's wide range of activities is inconsistent with his
> alleged limitations. He reported that he spent most of his day
> watching television and spending time with his girlfriend. He also
> reported that he prepared meals, performed household chores,
> shopped in stores, and engaged in social activities. As discussed
> above, it also appears that the claimant engaged in some work
> activity during 2007.

TR 59-60 (internal citations omitted). The ALJ properly considered and discounted the

Function Report - Adult.

The ALJ additionally considered other evidence that contradicted Plaintiff's alleged

limitations. As discussed above, the ALJ also considered the opinion of Dr. Edwards, who

found Plaintiff had fewer limitations than Plaintiff alleged. TR 59-61. The ALJ discussed Dr.

Edwards' findings that:

> the claimant had no limitations with understanding and memory.
> He also found that the claimant had no limitations with sustaining
> concentration and persistence. Additionally, it was found that he
> had no problems with adapting to changes.... It is however noted
> that the claimant's social activities suggest that he has only mild
> limitations in social functioning.

TR 61 (internal citations omitted).

23

As also discussed above, the ALJ additionally considered the opinions of Dr. Schoup and Dr. Regan, who found that:

> the claimant could concentrate and persist for simple and detailed tasks, despite some difficulty. It was also determined that the claimant would have some, but not substantial, difficulty interacting with the public, co-workers, and supervisors.

*Id.* The ALJ observed that "the claimant appears able to engage in social activities which indicates he can relate appropriately with others." TR 62.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 59-62. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters*, 127 F.3d at 531; and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters*, 127 F.3d at 531 (*citing Villarreal v. Secretary*, 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531

(*citing Bradley*, 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that:

> the claimant's medically determinable impairments could
> reasonably be expected to cause some of the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible
> to the extent they are inconsistent with the above residual
> functional capacity assessment.

TR 59. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge